# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

CONSERVANCY OF SOUTHWEST FLORIDA;
SIERRA CLUB; CENTER FOR BIOLOGICAL
DIVERSITY; PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY; AND
COUNCIL OF CIVIL ASSOCIATIONS, INC;,

                Plaintiffs,

-vs-                                           Case No.  2:10-cv-106-FtM-SPC

UNITED STATES FISH AND WILDLIFE
SERVICE; ROWAN GOULD, in his official
capacity as Director of the U.S. Fish and Wildlife
Service; UNITED STATES DEPARTMENT OF
INTERIOR; AND KENNETH SALAZAR, in his
official capacity as Secretary of the Department of
Interior;,

                Defendants.

_____/

## ORDER

This matter comes before the Court on The Seminole Tribe of Florida's Motion to Intervene

(Doc. #39) filed on June 24, 2010.  The Plaintiffs filed their Response in Opposition (Doc. #43) on

July 8, 2010.  The Motion is now ripe for review.

On February 18, 2010, the Plaintiffs filed the instant suit against the U.S. Fish and Wildlife

Service, Rowan Gould as Acting Director of the Service[1], the United States Department of the

Interior, and Ken Salazar as Secretary of the Interior ("the Federal Defendants").  Plaintiffs seek

injunctive and declaratory relief requiring the Federal Defendants to initiate rulemaking to establish

---

[1]In his official capacity, Acting Director Rowan Gould is substituted in place of Sam Hamilton pursuant to Fed. R. Civ. Proc. 25(d).

critical habitat for the Florida panther and a judicial declaration that the Service's denial of the Petitions: (1) failed to comply with Sections 2, 3, and 7 of the Endangered Species Act; (2) was arbitrary or capricious; (3) was an abuse of discretion; (4) was not in accordance with the law; (5) did not observe lawfully required procedure; and (6) was contrary to § 706(2)(A) and (D) of the Administrative Procedures Act.

In the instant motion, the Seminole Tribe seeks intervention into this case as a matter of right. It states that it is a federally-recognized Indian Tribe organized pursuant to Section 16 of the Indian Reorganization Act of 1934, and asserts that over 100,000 acres of land in which the Seminole Tribe has an interest will be directly impacted by the instant lawsuit, as Plaintiffs have alleged that it should be designated as critical habitat for the Florida panther pursuant to § 7(a)(2) of the Endangered Species Act. These lands include all of the Big Cypress, Brighton, and Immokalee Reservations, the Seminole Tribe's Tamiami Trail Homesites and other authorizations allowing the Seminole Tribe's use of land within the Big Cypress National Preserve (hereinafter collectively referred to as "Tribal Lands").

Under Fed. R. Civ. P 24(a) a party has a right to intervene if the applicant has a claim or interest in the case. Rule 24 reads in pertinent part:

> [u]pon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). "In this circuit, a party seeking to intervene under Rule 24(a)(2) must show: (1) that the intervention application is timely; (2) that an interest exists relating to the property or

transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represent the interests." TIG Specialty Ins. Co. v. Financial Web.com, Inc., 208 F.R.D. 336, 337 (M.D. Fla. 2002) (quoting Federal Savings and Loan Ins. Corp. v. Falls Chase Special Taxing District, 983 F.2d 211, 215 (11th Cir. 1993)). If each of these four requirements are met, the court must allow the party to intervene in the action. TIG Specialty Ins. Co., 208 F.R.D. at 337. Rule 24(a) imposes a timeliness requirement on motions to intervene, however, unlike timing elements in some other Federal Rules, the actual time limits are not set out in Rule 24(a). *See* Heaton v Monogram Credit Card Bank of Georgia, 297 F.3d 416 (5th Cir. 2002) (holding that timeliness is determined from all the circumstances). Generally Courts consider four factors in making a determination of timeliness: (1) length of delay in seeking intervention; (2) prejudicial impact of such delay on the existing parties; (3) prejudice to the intervenor if intervention is denied; and (4) other factors affecting fairness in an individual case. *See* Steven Baicker-Mckee, William M. Janssen, and John B. Corr, *Federal Civil Rules Handbook 2005*, Pt. III 551 (West 2005) (a brief but thorough discussion with relevant citations of law regarding timing issues under Rule 24).

As grounds for intervention, the Seminole Tribe asserts that its Motion is timely, the Seminole Tribe has a substantial interest in protecting its legal rights to use of the Tribal Lands identified by Plaintiffs as potential critical habitat for the Florida panther, the disposition of this lawsuit may as a practical matter impair or impede the Tribe's interest in preserving these Tribal Lands for the cultural use and benefit of the Seminole Tribe and its members, and the existing parties do not and cannot adequately represent the Tribe's unique and particularized interests in the outcome of this matter. Specifically, the Tribe asserts that the lands that Plaintiffs are seeking to

compel the Service to formally establish and designate as critical habitat are used in tribal, cultural, and religious practices, and that any decision of the Court will impact the Tribe's social, cultural, religious, political, and economic viability along with its legal right to manage its own natural resources as a dependent sovereign Indian nation.

The Interior has formally recognized that "Indian tribes are governmental sovereigns; inherent in this sovereign authority is the power to make and enforce laws, administer justice, manage and control Indian lands, exercise tribal rights and protect tribal trust resources." U.S. Fish & Wildlife Secretarial Order 3206, at 3. The Secretarial Order further recognized that "Indian lands are not federal public lands or part of the public domain, but are rather retained by tribes or set aside for tribal use. . . ." Id. at 4. In addition, Executive Order 13175 § 3(c), provides that the Federal Defendants should "where possible, defer to Indian Tribes to establish standards; and in determining whether to establish federal standards, consult with tribal officials as to the need for federal standards and any alternatives that would limit the scope of federal standards or otherwise preserve the prerogatives and authority of Indian Tribes."

By way of example, the Tribe asserts that the usual and customary uses within the Big Cypress National Preserve that could be impacted by this lawsuit include occupancy, hunting, fishing, trapping, and traditional tribal ceremonies. Further, the Big Cypress National Preserve Addition, which is also within the area the Plaintiffs seek to have designated as critical habitat, has been legally used by the Seminole Tribe, pursuant to the Big Cypress National Preserve Act for religious and cultural ceremonies such as the Green Corn Dance. Big Cypress National Preserve Addition Act of 1988, Pub. L. No. 100-301.

In response, the Plaintiffs concede that the Tribe asserts several unique interests in the land, but that these interests are adequately represented by the existing parties to the lawsuit. Also, Plaintiffs argue that any critical habitat designation would have *no impact* on the Tribe's existing uses of the land and that after a designation, the Tribe would have ample opportunity to protect its interest just as the public does. Further, Plaintiffs believe that the Fish and Wildlife Service would consider the Tribe's interests because "FWS specifically involves tribal interests in consultations under section 7 of the ESA" and that FWS seeks the same objectives as the Tribe.

The Eleventh Circuit has recognized that "[b]y requiring that the applicant's interest be... 'legally protectable,' it is plain that something more than an economic interest is necessary. What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." United States v. S. Fla. Water Mgmt. Dist., 922 F.2d 704, 710 (11th Cir. 1991). Here, the Seminole Tribe, as a dependent sovereign Indian nation, has legally recognized rights and interests that only it possesses and that only the Seminole Tribe and no other parties to the litigation can adequately protect and represent in this lawsuit. Disposition of this lawsuit could impair their ability to protect those interests. The Seminole Tribe lives on the very land that the Plaintiffs are trying to get designated as critical habitat. The Tribe has asserted that disposition of this case may impair or impede the Seminole Tribe's ability to carry on cultural, historical, or religious activities on its Tribal Lands. "The proposed intervenors' burden to show that their interests *may* be inadequately represented is minimal." Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993) (emphasis in original). The Court finds that the Seminole Tribe has met this burden and the Plaintiffs' assertion that any critical habitat

designation that comes out of this lawsuit will have absolutely no impact on the Seminole Tribe is unsupported and speculative at best.

With regard to timeliness, the original complaint was filed by the Plaintiffs on February 19, 2010, and the Intervenor filed its Motion on June 24, 2010. No case management report has been filed in this case and an Amended Complaint was recently filed on June 25, 2010. The Court finds that no prejudice would result to any party by granting this Motion and thus the Motion to Intervene is timely filed. *See* <u>Chiles v. Thornburgh</u>, 865 F.2d 1197, 1211 (11th Cir. 1989) (finding that a motion to intervene was timely filed seven months after the original complaint was filed). Since the Intervenor has a unique interest in the property that is currently unrepresented, the Court finds good cause to grant the Motion to Intervene as a matter of right.

Accordingly, it is now **ORDERED:**

(1)     The Seminole Tribe of Florida's Motion to Intervene (Doc. #39) is **GRANTED**. The Seminole Tribe of Florida is admitted to the case as a party Defendant.

(2)     The Seminole Tribe's request to file an Answer to the Amended Complaint within 20 days from the date of intervention is **GRANTED**. The Seminole Tribe has up to and including **August 4, 2010** to file its Answer.

(3)     The Intervener-Applicant Seminole Tribe of Florida's Motion for Leave to File Reply (Doc. #47) is **DENIED AS MOOT**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___14th___ day of July, 2010.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record