UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONSERVANCY OF SOUTHWEST FLORIDA;
SIERRA CLUB; CENTER FOR BIOLOGICAL
DIVERSITY; PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY; AND
COUNCIL OF CIVIL ASSOCIATIONS, INC,

Plaintiffs,

-vs-                                                                    Case No.  2:10-cv-106-FtM-SPC

UNITED STATES FISH AND WILDLIFE
SERVICE; ROWAN GOULD, in his official
capacity as Director of the U.S. Fish and Wildlife
Service; UNITED STATES DEPARTMENT OF
INTERIOR; AND KENNETH SALAZAR, in his
official capacity as Secretary of the Department of
Interior,

Defendants.
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Eastern Collier Property Owners' Motion to

Dismiss (Doc. #45) filed on July 9, 2010, the Federal Defendants' Motion to Dismiss (Doc. #46)

filed on July 12, 2010, and the Intervenor Seminole Tribe of Florida's Motion to Dismiss Amended

Complaint (Doc. #59) filed on August 4, 2010.  Plaintiffs filed an omnibus Response in Opposition

to all of the Motions to Dismiss on August 24, 2010 (Doc. #67).  Thus, the Motions are now ripe for

review. All three Motions make the same general arguments and therefore this Report and Recommendation addresses all three Motions.[1]

Plaintiffs have filed this lawsuit under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531, *et seq*. and the Administrative Procedures Act (APA), 5 U.S.C. §§ 702, *et seq*., challenging the Defendant Fish and Wildlife Service's (Service) denials of Plaintiffs' petitions to designate critical habitat for the Florida Panther *(Puma concolor coryi)*. The Defendants move to dismiss, arguing that the decision whether to designate critical habitat for the Florida Panther is committed to agency discretion by law and therefore this Court lacks subject-matter jurisdiction to review the denial of Plaintiffs' petitions. Defendants assert that dismissal is appropriate under Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.

Under Rule 12(b)(1), a party may move to dismiss a case on the ground that the Court lacks subject matter jurisdiction. "Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court come in two forms, a 'facial' attack and a 'factual' attack motion." Burkhart v. Chertoff, 2009 WL 32888, *1 (M.D. Fla. Jan. 6, 2009). "A facial attack challenges subject matter jurisdiction based on the allegations in the complaint, and the court takes the allegations in the complaint as true in deciding the motion . . . [and] [t]he complaint may be dismissed for a facial lack of standing only 'if it is clear that no relief could be granted under any set of facts that could be proved consistent

---

[1] Plaintiffs' allegations of wrongdoing are against the Federal Defendants, including the United States Fish and Wildlife Service, the United States Department of the Interior, Rowan Gould, in his official capacity as Director of the Untied States Fish and Wildlife Service, and Kenneth Salazar, in his official capacity as the Secretary of the Interior. Eastern Collier Property Owners and the Seminole Tribe of Florida are Defendant-Intervenors.

with the allegations.'" Id.  In this case, the Court is only considering the pleadings and no matters outside the pleadings such as testimony and affidavits.  Thus, Defendants have made a facial attack on this Court's subject matter jurisdiction.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Bedasee v Fremont Investment & Loan, 2010 WL 98996 * 1 (M.D. Fla. Jan. 6, 2010) (citing Erickson v. Pardus, 551 U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002)). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Insurance Co. v. Ground Down Engineering, Inc., 540 F.3d 1270, 1274 (11th Cir.2008) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Bedasee, 2010 WL 98996 at * 1 (citing Neitzke v. Williams, 490 U.S. 319, 326 (1989)); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir.1992)).  The Court has reviewed Plaintiffs' Amended Complaint, as well as the briefing of the parties with these principles in mind.

## BACKGROUND

### A.     Factual Background

The Florida Panther has been listed as an endangered species since 1967.  32 Fed. Reg. 4,001 (Mar. 11, 1967).  The United States Fish and Wildlife Service has never designated critical habitat for the Florida Panther.  "Critical habitat" is defined as:

> (i) the specific areas within the geographical area occupied by the species . . . on which are found those physical and biological features (I) essential to the

conservation of the species and (II) which may require special management considerations or protection; and

(ii) specific areas outside the geographical area occupied by the species . . . upon a determination of the Secretary that such areas are essential for the conservation of the species.

16 U.S.C. § 1532(5)(A).  Once critical habitat is designated for a species, federal agencies are required to consult with the Service to ensure that their activities do not adversely modify the critical habitat to the point that it will no longer aid in a species' recovery.  16 U.S.C. § 1536(a).  The Secretary of the Interior has charged the Service with carrying out the ESA's duties, including designating critical habitat for species listed as endangered or threatened.  50 C.F.R. § 402.01(b).


Plaintiffs allege that the Florida Panther is teetering on the brink of extinction and critical habitat is crucial to their survival as a species.  Thus, in January 2009, the Conservancy of Southwest Florida (Conservancy) filed a petition with the Service under the ESA, Service regulations, and the APA, asking the agency to establish critical habitat for the Florida Panther.  The Sierra Club and numerous other environmental organizations joined in that petition in July 2009.  On September 17, 2009, the Center for Biological Diversity and the Public Employees for Environmental Ethics and Counsel of Civil Associations petitioned the Service to designate critical habitat for the Florida Panther.  And in November 2009, the Sierra Club filed a supplemental petition with the Service to establish critical habitat for the Florida Panther, specifically to account for habitat loss due to climate change.  Plaintiffs assert that these petitions were based on scientific reports that were submitted with their petitions, which identified three priority zones for Panther habitat conservation.  Plaintiffs' petitions asked the agency to designate these zones as critical habitat because this would provide

landscape-level protection of the entire area recognized by the best available science as essential to the survival and recovery of the species.

Because the Service had not granted or denied the petitions, on December 16, 2009, Conservancy and the Sierra Club gave a 60-day notice of intent to sue under the ESA's citizen-suit provision, 16 U.S.C. § 1540(g), and notified the Service by certified mail that they intended to file suit against it under the ESA and APA to compel responses to the petitions.  That letter also included a notice of intent to sue for violations of ESA § 7.  Plaintiff Center for Biological Diversity also served a citizen-suit notice on December 22, 2009.  Conservancy and the Sierra Club sent a supplemental notice letter on January 26, 2009.  In addition, Plaintiffs sent another 60-day notice of intent to sue on March 1, 2010, to Defendants.  More than 60 days passed from the date of that letter to the filing of the Complaint.

On February 11, 2010, the Service denied the Conservancy's January 2009 petition, the Center for Biological Diversity's September 2009 petition, and the Sierra Club's November 2009 petition, in their entirety in three separate letters, and refused to designate critical habitat for the Florida Panther.  In denying the petitions, the Service noted that it is in the process of working with several conservation organizations and private landowners in Collier County, Florida "to implement a landscape-scale Habitat Conservation Plan for which the landowners would seek a permit from the Service in accordance with Section 10 of the Act."  See Def. Ex. 1 at 3.  The Service noted that this process, referred to as the "Florida Panther Protection Program," may provide a framework for conservation and recovery efforts in other locations. Id.

**B.      Statutory Framework**

        **1.      The Endangered Species Act**

Congress passed the ESA in 1973 in order "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." Pub. L. No. 93-205, § 2(b), 87 Stat. 884, 885 (1973). Human destruction of animal habitat was a main concern surrounding the passage of the Act. In the congressional debate of the ESA, Representative Lehman of Florida stated, "[t]he new law recognizes that the greatest threat to endangered animals has been man's destruction of their habitat." 119 Cong. Rec. 30,528 (1973).

The 1973 Act did not require that critical habitat be designated at the time of listing of the species on the endangered list. The *current* form of the Act requires the Secretary of the Interior to promulgate regulations listing those species of plants or animals that are "threatened" or "endangered" under specific criteria, and to designate their critical habitat at the time of listing. 16 U.S.C. § 1533. This requirement that the listing of the species and the designating of critical habitat occur concurrently was passed in the 1978 amendments to the Act. The relevant provisions read:

> The Secretary, by regulation promulgated in accordance with subsection (b) of this section and to the maximum extent prudent and determinable-
>
> > (A) shall, concurrently with making a determination under paragraph (1) that a species is an endangered species or a threatened species, designate any habitat of such species which is then considered to be critical habitat; and
> >
> > (B) may, from time-to-time thereafter as appropriate, revise such designations.

16 U.S.C. § 1533(a)(3)(A). When determining critical habitat, the Secretary shall consider the best scientific data available and the economic impact of the designation. 16 U.S.C. § 1533(b)(2). The Secretary may exclude any area from a critical habitat if the benefits of such exclusion outweigh the benefits of designating that area, unless such exclusion will result in extinction of the species. Id.

Congress declared at the time of the 1978 amendments that the general rule is designation of critical habitat. "The committee intends that in most situations that Secretary will, in fact, designate critical habitat at the same time that a species is listed as either endangered or threatened. It is only in rare circumstances where the specification of critical habitat concurrently with the listing would not be beneficial to the species." H.R. Rep. No. 95-1625 at 17 (1978), reprinted in 1978 U.S.C.C.A.N. 9453, 9467.

Thus, after the 1978 amendment there was a requirement that critical habitat be designated unless it finds that the benefits of non-designation outweigh the benefits of designation. 16 U.S.C. § 1533(b)(2). Yet, under the Act, for species listed prior to 1978 (in which the Florida Panther falls) the Secretary has the discretion whether to designate critical habitat. The Act states that "[c]ritical habitat *may* be established for those species now listed as threatened or endangered species for which no critical habitat has heretofore been established as set forth in subparagraph (A) of this paragraph." 16 U.S.C. § 1532(5)(B) (emphasis added). This pre-1978 species discretion has been recognized as a "legislative loophole" by which some species would be afforded less protection simply because of a timing issue. See Thomas F. Darin, Designating Critical Habitat Under the Endangered Species Act: Habitat Protection Versus Agency Discretion, 24 Harv. Envtl. L. Rev. 209, 215 n.38 (2000) (recognizing that "a species listed several years later might have a better chance for survival with its critical habitat mandatorily protected").

The ESA citizen-suit provisions allow private citizens to challenge ESA action or inaction in certain instances. The relevant provisions state:

> (1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf-

(A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof; or

(B) to compel the Secretary to apply, pursuant to section 1535(g)(2)(B)(ii) of this title, the prohibitions set forth in or authorized pursuant to section 1533(d) or 1538(a)(1)(B) of this title with respect to the taking of any resident endangered species within any State; or

(C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation, or to order the Secretary to perform such act or duty, as the case may be.

16 U.S.C. § 1540(g)(1)(A)-(C).

## 2.      The Administrative Procedures Act

The APA authorizes a court to "set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).  Plaintiffs bring this action under this provision of the APA.  "The APA, by its terms, provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in the court,' § 704, and applies universally 'except to the extent that - (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law,' § 701(a)." Bennett v. Spear, 520 U.S. 154, 175 (1997).

## C.      Plaintiffs' Amended Complaint

Plaintiffs' Amended Complaint for Declaratory Judgment and Injunctive Relief (Doc. #42) includes four claims for relief.  First, Plaintiffs allege that the Federal Defendants violated the ESA,

Service Regulations, and the APA when they denied Plaintiffs' petitions to establish critical habitat. Plaintiffs claim that the Service's denial was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A) and (D), for a host of reasons, including: denying the petitions contrary to the evidence before the agency on the need for critical habitat for the Florida Panther; overlooking a serious aspect of the problem in ignoring climate change and the benefits of critical habitat designation; and failing to offer a rational explanation between the facts presented in the petitions and the conclusion made by the Service in denying them.  Plaintiffs point out that the Service's denial letters assert that critical habitat is not necessary, but do not explain why the Service takes this position, but lists other activities the Service is taking to protect the Florida Panther.  And it was further arbitrary and capricious for the Service to not comply with the regulatory requirements for review of petitions to designate critical habitat in 50 C.F.R. § 424.14(d).  That regulation requires review to be in accordance with the APA and "applicable department regulations" found at 50 C.F.R. § 424.14(b), which lists five elements that must be considered by the agency.

Second, Plaintiffs allege the Service violated ESA §§ 2, 3, 7, and the APA in denying their petitions for critical habitat.  Section 2(c) of the ESA states that "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this chapter."  16 U.S.C. § 1531(c).  Section 3 of the ESA defines conserve, conservation, and conserving as, "to use and the use of all methods and procedures which are necessary to bring an endangered species or threatened species to the point at which the measures pursuant to this chapter are no longer necessary."  16 U.S.C. § 1532(3).  Section 7(a)(1) of the ESA requires that all federal agencies "shall . . . utilize their authorities in

furtherance of the purposes of this Act by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 4 of this Act."  16 U.S.C. § 1536(a)(1). Plaintiffs allege that by denying the petitions and not following these provisions, the Service's actions are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law, and without observance of procedure required by law, contrary to the APA, 5 U.S.C. § 706(2)(A) and (D).

Third, Plaintiffs allege that Defendants failed to perform their non-discretionary duties under the ESA and applicable regulations to apply the best scientific data.  This claim is brought under the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g)(1)(C), which allows for any private citizen to bring an action "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." Plaintiffs claim that the Secretary failed to comply with his non-discretionary duties in denial of each of Plaintiffs' petitions to establish or revise critical habitat for the Florida Panther.  Defendants did so by not complying with: a) section 4(b)(2) of the ESA, which states: "The Secretary shall designate critical habitat, and make revisions thereto, under subsection (a)(3) on the basis of the best scientific data available and after taking into consideration the economic impact, and any other relevant impact, of specifying any particular area of critical habitat."  16 U.S.C. § 1533(b)(2); b) 50 C.F.R. § 424.12, which provides a detailed list of scientific considerations for critical habitat designation and providing that "[a] final designation of critical habitat shall be made on the basis of the best scientific data available"); and c) 50 C.F.R. § 424.13 (listing possible data sources).

Fourth, and finally, Plaintiffs claim that the Federal Defendants failed to comply with non-discretionary duties under ESA and applicable regulations on procedures for designation and

revision of critical habitat. Plaintiffs do not state that they bring this claim under the citizen-suit provision of the ESA, but the Court believes they have given that Plaintiffs are alleging a violation of the Service's non-discretionary duties. With regard to designating critical habitat, Plaintiffs allege that the Service's review and response to their petitions to designate critical habitat did not comply with 50 C.F.R. § 424.14(d), requiring the Service to comply with the APA and applicable department regulations, which includes 50 C.F.R. § 424.12(b). This regulation requires the Service to consider those "physical and biological features that are essential to the conservation of a given species and that may require special management considerations or protections," and it lists five elements that must be considered. 50 C.F.R. § 424.12(b) further requires that "when considering the designation of critical habitat, the Secretary shall focus on the principal biological or physical constituent elements within the defined area that are essential to the conservation of the species." With regard to revising critical habitat, Plaintiffs note that the Service must, to the maximum extent practicable, within 90 days of receiving a petition to revise critical habitat determine, publish in the Federal Register, "a finding as to whether the petition presents substantial scientific information indicating that revision may be warranted." 16 U.S.C. § 1533(b)(3)(D)(I). However, the Secretary did not make that determination or publish any such determination in the Federal Register.

On this point, Plaintiffs' briefing argues that Congress intended that from October 13, 1982, forward, designation of critical habitat for pre-1982 listed species, such as the Florida Panther, would be subject to Section 4 procedures for revisions to critical habitat. The 1982 amendments to the ESA were enacted by Pub. L. 97-304 (Oct. 13, 1982), including Section 2(b) of Law, which were not codified in the U.S. Code. Section 2(b)(2) states:

> Any regulation proposed after, or pending on, the date of the enactment of this Act [Oct. 13, 1982] to designate critical habitat for a species that was determined before

such date of enactment to be endangered or threatened shall be subject to the procedures set forth in section 4 of such Act of 1973 (as amended by subsection (a)) for regulations proposing revisions to critical habitat instead of those for regulations proposing the designation of critical habitat.

Pub. L. 97-304, 1982 HR 6133 (Oct. 13, 1982).

Plaintiffs' prayer for relief requests that this Court enter a judgment: a) declaring that in denying Plaintiffs' petitions Defendants have not complied with the ESA, Service regulations, and the APA; and that the denials were arbitrary and capricious, an abuse of discretion, and not in accordance with the law, and without observance of procedure required by law, contrary to the APA, 5 U.S.C. § 706(2)(A) and (D); b) declaring that in denying the Plaintiffs' petitions the Defendants have not met their obligations under ESA §§ 2, 3, and 7, and/or their actions are arbitrary and capricious, an abuse of discretion, and not in accordance with law, and without observance of procedure required by law, contrary to APA, 5 U.S.C. § 706(2)(A) and (D); c) pursuant to 5 U.S.C. § 706(2)(A), enter an order vacating the denial of the petitions; and d) entering an injunction remanding the matter to the Defendants, ordering Defendants to make all necessary findings on the petitions, ordering Defendants to initiate rulemaking to designate critical habitat for the Florida Panther in accordance with the petitions, and setting a reasonable deadline for these tasks to be completed.

## DISCUSSION

The Plaintiffs bring the present suit under the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g)(3), and under the judicial review provisions of the Administrative Procedures Act, 5 U.S.C. § 706(2), alleging defects in the denial of their petitions.  Specifically, Plaintiffs allege that the Service did not follow the required procedures for designation of critical habitat under the ESA, by overlooking serious aspects of the problem and the benefits of critical habitat designation and

failing to base its decision on the science that was set forth in the petitions.  The criteria for designating critical habitat has been set forth in a regulations issued by the Secretary of the Interior. See 50 C.F.R. § 424.12.  These regulations set forth the factors and data that the Service must take into account.  The ESA states that "critical habitat *may* be designated for those species listed as threatened or endangered but for which no critical habitat has previously been designated" - providing the Service with the discretion as to whether to designate critical habitat. 50 C.F.R. § 424.12(g) (emphasis added).

The thrust of Defendants' argument is that because the Service's decision regarding designation of critical habitat for the Panther is committed to the agency's discretion under the statute, the ESA citizen-suit provision does not provide jurisdiction for review of Plaintiffs' claims. The Plaintiffs rely on the citizen-suit provision, 16 U.S.C. § 1540(g)(1)(C), as a basis for counts 3 and 4.  This provision states that a citizen suit may be brought "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary."  The Defendants argue that since the decision whether to designate critical habitat for the Florida Panther is discretionary with the Service (citing the "may" language of the Act), relief may not be granted in a citizen suit.

Yet, as the Supreme Court has recognized in Bennett, just because a suit does not survive under the ESA citizen-suit provision, does not mean that the agency action cannot be reviewed by the courts under the APA, stating that "[n]othing in the ESA's citizen-suit provision expressly precludes review under the APA, nor do we detect anything in the statutory scheme suggesting a purpose to do so."  Bennett, 520 U.S. at 175.  Plaintiffs bring counts 1 and 2 under the ESA and APA specifically, but counts 3 and 4 could still fall under the provisions of the APA.  Even so,

Defendants argue that the provisions of the APA also do not allow for judicial review of any of Plaintiffs' claims because Section 701 states that the APA review provisions do not apply to the extent that "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  In response, Plaintiffs argue that the designation of critical habitat is non-discretionary and therefore Section 706(2) allows for this Court to review that decision to determine whether it was arbitrary, capricious, or an abuse of discretion.

Defendant-Intervenor Eastern Collier Property Owners also argue that the Amended Complaint must be dismissed for lack of Article III standing because Plaintiffs cannot establish redressability where the Court cannot order the relief requested to redress alleged injuries.

## A.    Jurisdictional Analysis

It is well-established in American jurisprudence that federal courts are courts of limited jurisdiction.  "Because federal courts are courts of limited jurisdiction, we must address as a threshold matter [Defendants'] argument that the [Court] lacks subject matter jurisdiction."  Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242 (11th Cir. 2005).  Federal courts only have that power authorized by Article III and statutes enacted by Congress.

In this case, the Service made a decision not to exercise its authority to designate critical habitat for the Florida Panther when it was petitioned to do so by the Plaintiffs.  The question is now whether this is judicially reviewable.  Defendants argue that there is express statutory preclusion of judicial review under both the ESA and APA, hanging their hat on non-discretionary review, citing to the fact that a citizen suit may not be brought under the ESA to challenge decisions that are discretionary with the Secretary.  Since the statute states that the agency "may" designate critical habitat for pre-1978 species, instead of "shall" designate as is required for species listed post-1978

amendment, the decision is discretionary.  See 16 U.S.C. § 1532(5)(B).  Also under the APA, Defendants argue that Section 701(a)(2) does not allow for judicial review under the APA if the decision is committed to agency discretion by law.

With respect to Count 2 of Plaintiffs' Amended Complaint, Plaintiffs allege the Service violated ESA § 7(a)(1) in denying the petitions for critical habitat.  Section 7(a)(1) of the ESA requires that all federal agencies "shall . . . utilize their authorities in furtherance of the purposes of this Act by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 4 of this Act."  16 U.S.C. § 1536(a)(1).  The Eleventh Circuit has noted that even assuming an agency has discretion, "section 7(a)(1) imposes a *judicially reviewable* obligation upon all agencies to carry out programs for the conservation of endangered and threatened species . . . . [and] [t]otal inaction is not allowed."  Florida Key Deer v. Paulison, 522 F.3d 1133, 1146 (11th Cir. 2008) (emphasis added).  Thus, the Court finds that it has jurisdiction to review the ESA § 7 violations alleged in Count 2 of Plaintiffs' Amended Complaint.

### 1.   Claims under the ESA citizen-suit provision - Counts 3 and 4

The Court will now address Defendants' argument that the Court does not have subject matter jurisdiction under the ESA citizen-suit provision.  "Although petitioners contend that their claims lie under both the ESA and APA, we look first at the ESA . . . because the APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court.'" Bennett, 520 U.S. at 160-61; 5 U.S.C. § 704.

Plaintiffs allege counts 3 and 4 under subsection (C) of the citizen-suit provision.  The Supreme Court has recognized that it is "clear and unambiguous" that subsection (C) "covers *only violations of § 1533*."  Bennett, 520 U.S. at 171 (emphasis added).  In Counts 3 and 4, Plaintiffs

claim that Defendants violated Section 1533(b)(2) and the agency's rules and regulations that codified and specified standard practice in executing the ESA, 50 C.F.R. § 424.12-.13, by failing to rely on the best scientific data in making their determinations. And failed in their non-discretionary duties under ESA and applicable regulations on procedures for designation and revision of critical habitat under 16 U.S.C. § 1533(b)(3)(D)(I). Thus, counts 3 and 4 come within subsection (C). Defendants challenge suit under this subsection because the terms of Section 1533 are discretionary for pre-1978 species, rather than mandatory. It is true that the terms of Section 1533(b)(2) are mandatory: "The Secretary shall designate critical habitat and make revisions thereto, . . . on the basis of the best scientific data available and after taking into consideration that economic impact, and any other relevant impact, of specifying any particular area as critical habitat." But Defendants seem to be arguing that the Court must also look to Section 1532(5)(B), which states that "[c]ritical habitat *may* be established for those species now listed as threatened or endangered species for which no critical habitat has heretofore been established as set forth in subparagraph (A) of this paragraph" when pre-1978 species are involved that would turn the mandatory language of Section 1533 into a discretionary decision with the Service.

The Court agrees with Defendants that the plain language of the ESA renders the decision to designate critical habitat for pre-1978 species discretionary with the Secretary and therefore if it is a discretionary decision, then jurisdiction does not lie under the citizen-suit provision of the ESA. This conclusion has been reached by other federal courts in cases involving pre-1978 species. See Fund for Animals v. Babbitt, 903 F. Supp. 96, 115 (D.C. Dist. 1995) (but found jurisdiction under the APA); Natl. Wilderness Institute v. U.S. Army Corps of Engineers, No. Civ. 010273, 2005 WL

691775, *21-22 (D.C. Dist. Mar. 23, 2005); Enos v. Marsh, 616 F. Supp. 32 (D. Haw. 1984); Morrill v. Lujan, 803 F. Supp. 424, 432 (S.D. Ala. 1992).

The Court's inquiry on counts 3 and 4 does not end here though.  Even though the Court does not have subject matter jurisdiction over these claims under the ESA citizen-suit provision, the Court must still look to the APA.  "No one contends (and it would not be maintainable) that the causes of action against the Secretary set forth in the ESA's citizen-suit provision are exclusive, supplanting those provided by the APA.  The APA, by its terms, provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court,' § 704, and applies universally 'except to the extent that-(1) states preclude judicial review; or (2) agency action is committed to agency discretion by law,' § 701(a)."  Bennett, 520 U.S. at 175.

### 2.    Administrative Procedures Act

The Court now turns to whether it has subject matter jurisdiction over all of Plaintiffs' claims under the APA.  Plaintiffs assert that this Court has jurisdiction under the APA over all four counts.  The Supreme Court has recognized that "before any review at all may be had, a party must first clear the hurdle of § 701(a)."  Heckler v. Chaney, 470 U.S. 821, 828 (1985).  "As a general rule, actions taken by federal administrative agencies are subject to judicial review."  Natl. Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 140-41 (1967)).  Defendants argue that the review provisions of the APA do not apply because it is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).

Under the APA, the provision indicating that judicial review is not available when "agency action is committed to agency discretion by law" is a narrow one, and is limited only to those rare situations where the statutes are drawn in such broad terms that there is no law for the reviewing

court to apply in a given case.  <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 410 (1971); <u>Lenis v. U.S. Attorney General</u>, 525 F.3d 1291, 1293 (11th Cir. 2008); <u>Greenwood Utilities Commission v. Hodel</u>, 764 F.2d 1459, 1464 (11th Cir. 1985).  In <u>Citizens</u>, the Supreme Court explained that Subsection 701(a)(2) of the APA applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" <u>Id.</u>  In its analysis of APA Section 701(a)(2), the Supreme Court has explained that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  <u>Heckler v. Chaney</u>, 470 U.S. 821, 830 (1985).  The Eleventh Circuit has stated on this point that if there is no standard against which agency action may be judged, "then no issues capable of judicial resolution are presented and the courts are accordingly without jurisdiction."  <u>Greenwood Utilities</u>, 764 F.2d at 1464 (internal quotations omitted).  Most recently, the Supreme Court stated that "[p]rovisions for agency review do not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure . . . . Generally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive."  <u>Free Enterprise Fund v. Public Co. Accounting Oversight Bd.</u>, *et al.*, --- U.S. ---, 130 S. Ct. 3138, 3150 (2010) (internal quotations omitted).

The Supreme Court has also recognized that "we presume that Congress does not intend to limit jurisdiction if a finding of preclusion could foreclose all meaningful judicial review . . ." <u>Free Enterprise Fund</u>, 130 S. Ct. at 3150.  The Eleventh Circuit has noted that [j]udicial review, however, is the rule and nonreviewability is a narrow exception which must be clearly demonstrated."

Greenwood Utilities, 764 F.2d at 1464.  "The mere fact that a statute grants broad discretion to an agency does not render the agency's decisions completely nonreviewable under the 'committed to agency discretion by law' exception unless the statutory scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised."  Robbins v. Reagan, 780 F.2d 37, 45 (D.C. Cir. 1985).

Defendants argue that the Service's decision not to designate critical habitat for the Panther is discretionary and therefore unreviewable under the APA because Congress did not provide any standards as to when that discretion should be exercised.  Def. Br. at 15.  In other words, the ESA sets forth no specific criteria that the Service must consider in deciding whether to exercise its authority to designate critical habitat for pre-1978 species because the statute lacks standards governing the Service's discretionary decisions.  Plaintiffs assert that there is law to apply and point to the APA's arbitrary and capricious standard (which Plaintiffs argue applies to all agency actions); the APA's standard on petitions for rulemaking, 5 U.S.C. § 553; and the ESA regulations that provide numerous, specific standards that the Service must follow once it receives a petition to designate critical habitat.

Even though the Heckler case involved an enforcement action, the Court finds guidance from this case.  See Heckler, 470 U.S. 821.[2]  In Heckler, the Supreme Court was deciding "the important

---

[2]Heckler held that agency decisions not to take *enforcement* actions are generally not subject to judicial review.  470 U.S. at 838.  This Court believes this holding is not applicable to this case as this case does not involve an enforcement action.  The Supreme Court has shown a strong presumption in favor of review of agency action outside the enforcement arena.  See Robbins v. Reagan, 780 F.2d 37, 45 (D.C. Cir. 1985) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 140-41 (1967))(noting that "[where agency action is not analogous to enforcement decisions] the presumption
                                                              (continued...)

question of the extent to which determinations by the FDA not to exercise its enforcement authority over the use of drugs in interstate commerce may be judicially reviewable." <u>Id.</u> at 828.  To do this, the Court turned to the FDCA.

> The danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance.  That decision is in the first instance for Congress, and we therefore turn to the FDCA to determine whether in this case Congress has provided us with 'law to apply.'  If it has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is 'law to apply' under § 701(a)(2), and courts may require that the agency follow that law; if it has not, then agency refusal to institute proceedings is a decision 'committed to agency discretion by law' within the meaning of that section.

<u>Id.</u> at 835.  It has been recognized that courts "begin with a presumption of reviewability, which is only rebutted by an affirmative showing that the statute's allocation of discretion is so broad that the courts simply have no standards to apply."  <u>Robbins</u>, 780 F.2d at 47.

The statutory structure in this case is teeming with what appears to be Congressional intent that actions under the ESA be reviewable because there is law for this Court to apply on a record review.  The regulations issued by the Secretary permit any "interested person" to petition the Secretary requesting *designation* of critical habitat, and then sets forth the procedures that must be followed once a petition is received.  50 C.F.R. §§ 424.14(a), 424.10, and 424.12(b); 43 C.F.R. § 14.2 ("under the Administrative Procedures Act, any person may petition for the issurance, amendment, or repeal of a rule [5 U.S.C. 553(e)].  The petition will be addressed to the Secretary of the Interior").  Under 50 C.F.R. § 424.14(d), the Secretary has stated that "[u]pon receiving a

---

[2](...continued)
strongly supports reviewability, and thus, review is available unless Congress affirmatively commits the action to discretion in a manner that makes review not feasible").

petition to designate critical habitat or to adopt a special rule to provide for the conservation of a species, the Secretary <u>shall</u> promptly conduct a review in accordance with the Administrative Procedures Act (5 U.S.C. 553) and applicable Departmental regulations, and take appropriate action." (emphasis added).  These regulations do not provide for discretion in following these steps. While the discretion whether to ultimately decide whether to designate critical habitat may lie with the agency, the agency does not have discretion to not follow the steps required when considering petitions to designate critical habitat.  This is not a case in which the "statute confers such uninhibited discretion upon an administrator that courts have no standard against which to measure the lawfulness of agency action."  <u>Greenwood Utilities</u>, 764 F.2d at 1464 (internal quotations omitted).  In addition, Section 4 of the ESA provides standards applicable to petitions to revise critical habitat designations, *e.g.*, 16 U.S.C. §§ 1533(b)(2) (requiring consideration of the "best scientific data available", requiring the Service to "tak[e] into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat").  Furthermore, the 1982 amendments that were not codified into the U.S. Code did state that "[a]ny regulation proposed after, or pending on, the date of the enactment of this Act [Oct. 13, 1982] to designate critical habitat for a species that was determined before such date of enactment to be endangered or threatened shall be subject to the procedures set forth in section 4 of such Act of 1973."  Pub. L. 97-304, 1982 HR 6133 (Oct. 13, 1982).  The entire statute seems to evince an entitlement to a meaningful review of a petition to designate critical habitat - even for pre-1978 listed species.

All of this points the Court to numerous standards and law by which to gauge whether the Service's actions were an abuse of discretion on a record review.  Thus, there is "law to apply."  The

ESA is not drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.  Also, the Court has found no provision in the ESA stating that the APA does not apply to decisions made under the ESA.

The Service argues that since it has discretion whether to make a final determination, it means that it can ignore the statutory requirements that must be followed when considering petitions to designate critical habitat.  The Court disagrees.  Just because an agency has the authority granted by Congress to make a final determination as to whether critical habitat should be designated, does not mean that the agency has unlimited, unreviewable discretion to not follow the rules.  "It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking."  Bennett, 520 U.S. at 172. In Bennett, which involved the designation of critical habitat under the ESA, but did not involve pre-1978 species, stated that "the fact that the Secretary's ultimate decision is reviewable only for abuse of discretion does not alter the categorical requirement that in arriving at his decision, he 'tak[e] into consideration the economic impact and any other relevant impact,' and use 'the best scientific data available.'"  Id.  Therefore, since the APA's review provisions apply, this Court has subject matter jurisdiction to conduct a record review of the agency's actions and it is respectfully recommended that Defendants' Motions to Dismiss be denied.[3]

---

[3]However, the Court does not believe that it would have jurisdiction to grant Plaintiffs' request that the Court "order the Service to undertake prompt rulemaking in order to designate critical habitat for the Florida Panther consistent with the petitions." Pl. Compl. ¶ 5.  While the Court has found that it has jurisdiction to conduct a record review to determine whether the Service complied with applicable rules and regulations in denying the petitions, it does not have jurisdiction to order that the Service institute a rule designating critical habitat for the Panther.  The ESA states that the Service "may" designate critical
(continued...)

B.     **Standing**

In addition to the jurisdictional arguments, Defendant-Intervenor ECPO argues that the

Amended Complaint should be dismissed for lack of Article II standing because Plaintiffs cannot

establish redressability.  To establish standing, a plaintiff must demonstrate (1) that it suffers an

injury in fact, (2) caused by a challenged action of the defendant, and (3) redressable by the court.

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998).  Article III standing is a threshold

issue that must be addressed regardless of whether it is raised by the parties.  Norton, 324 F.3d at

1242.  In Lujan v. Defenders of Wildlife, a Supreme Court case involving the ESA, the Court

reiterated:

> the irreducible constitutional minimum of standing contains three elements . . . First,
> the plaintiff must have suffered an injury in fact - an invasion of a legally protected
> interest which is (a) concrete and particularized and (b) actual or imminent, not
> conjectural or hypothetical. Second, there must be a causal connection between the
> injury and the conduct complained of - the injury has to be fairly traceable to the
> challenged action of the defendant, and not the result of the independent action of
> some third party not before the court.  Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted).

**Injury In Fact**: With regard to injury, in Lujan, the Court noted that "[o]f course, the desire

to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable

interest for purposes of standing."  Id. at 562-63.  "[E]nvironmental plaintiffs adequately allege

injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic

and recreational values of the area will be lessened' by the challenged activity."  Friends of the

---

[3](...continued)
habitat for pre-1978 species.  See 16 U.S.C. § 1532(5)(B).  Thus,
the ultimate decision lies with the Service and Congress once they
have completed a proper review of the petitions and evidence as
required by the applicable rules and regulations.

Earth, Inc. v. Laidlaw Envt'l Servs., Inc., 528 U.S. 167, 183 (2000) (citing Sierra Club v. Morton, 405 U.S. 727, 735 (1972)).   In the Amended Complaint, Plaintiff Conservancy alleges that "individual Conservancy members have an aesthetic and scientific appreciation of the Florida panther in the wild and travel to areas in the Primary Zone of panther habitat in hopes of viewing and photographing the elusive panther." ¶ 8c.  Plaintiff Sierra Club alleges that it "has members who use the public lands in Florida panther habitat, including areas that Plaintiffs have requested be designated critical habitat, for recreation, wildlife observation, study and photography, and aesthetic, scientific and business purposes." ¶ 9.  Plaintiff Center for Biological Diversity alleges that its members "regularly visit, use, and enjoy the areas that the Center petitioned for as critical habitat for the Florida panther, and plan to continue visiting, using, and enjoying these areas in the future.  The Center and its members derive environmental, recreational, scientific, and aesthetic benefit from their use and enjoyment of these areas" ¶ 10.  Plaintiff Public Employees for Environmental Ethics alleges its "members reside in the State of Florida and study wildlife, including the Florida panther, in the Everglades ecosystem for professional, recreational, and aesthetic benefits." ¶ 11.  Plaintiffs allege that these interests would be directly, adversely, and irreparably affected by the Secretary's failure to designate critical habitat for the Florida Panther. The Supreme Court has held that unlike a motion for summary judgment, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Bennett, 520 U.S. 167-68 (quoting Lujan, 504 U.S. at 561).  Thus, at the motion to dismiss stage, the Court accepts these allegations as true for the purposes of standing and finds that the Amended Complaint alleges a requisite injury in fact.

**Causation**: With regard to causation, our discussion has made clear that the injury to Plaintiffs is at least arguably caused by or "fairly traceable" to the Service's failure to follow applicable regulations in denial of the petitions for critical habitat. Plaintiffs have alleged that the Service's actions have caused them injury and they will continue to be adversely affected by Defendants' continuing failure to comply with the ESA and the APA with regard to the petitions and the protection of the Florida Panther. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim." Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1286 (11th Cir. 2010) (quoting Lujan, 504 U.S. at 889) (noting that under a facial attack, the district court must consider the well-pleaded allegations in the plaintiff's complaint as true).

**Redressability**: The thrust of ECPO's challenge to standing redressability; that is that the Court cannot order the relief requested to redress the alleged injury in this case. In other words, because the Court does not have jurisdiction to conduct a record review of this case, Plaintiffs lack standing. As discussed above, this Court has determined that it does have jurisdiction under the APA to review the denial of Plaintiffs' petitions and therefore redressability is satisfied.

## CONCLUSION

Therefore, it is respectfully recommended that the District Court has jurisdiction under the APA to review the Defendants' denial of the Plaintiffs' petitions for critical habitat for the Florida Panther on a record review.

Accordingly, it is now

**RECOMMENDED:**

Eastern Collier Property Owners' Motion to Dismiss (Doc. #45) be **DENIED**.   Federal Defendants' Motion to Dismiss (Doc. #46) be **DENIED**.   Intervenor Seminole Tribe of Florida's Motion to Dismiss Amended Complaint (Doc. #59) be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this ___2th___ day of November, 2010.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record