UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONSERVANCY OF SOUTHWEST FLORIDA;
SIERRA CLUB; CENTER FOR BIOLOGICAL
DIVERSITY; PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY; AND
COUNCIL OF CIVIL ASSOCIATIONS, INC;,

        Plaintiffs,

vs.                       Case No.  2:10-cv-106-FtM-SPC

UNITED STATES FISH AND WILDLIFE
SERVICE; ROWAN GOULD, in his
official capacity as Director of the
U.S. Fish and Wildlife Service;
UNITED STATES DEPARTMENT OF
INTERIOR; AND KENNETH SALAZAR, in
his official capacity as Secretary
of the Department of Interior;,

        Defendants.
_____

## OPINION AND ORDER

On November 12, 2010, United States Magistrate Judge Sheri Polster Chappell submitted a Report and Recommendation (Doc. #85) to the Court recommending Eastern Collier Property Owners', Federal Defendants', and Intervenor Seminole Tribe of Florida's Motions to Dismiss (Docs. ## 45; 46; 59) be denied.  All parties filed Objections to the Report and Recommendation (Docs. ## 90; 91; 92) and Responses to the Objections.  (Docs. ## 93; 96; 97; 98; 99.) For the reasons set forth below, the Court finds that it has subject matter jurisdiction and that plaintiffs have standing, but that none of the counts state claims upon which relief may be granted.

**I.**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation.   28 U.S.C. § 636(b)(1); <u>United States v. Powell</u>, 628 F.3d 1254, 1256 (11th Cir. 2010).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C); <u>see also</u> <u>United States v. Farias-Gonzalez</u>, 556 F.3d 1181, 1184 n.1 (11th Cir. 2009).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  <u>Jeffrey S. v. State Bd. of Educ. of Ga.</u>, 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. 1609, 94th Cong., § 2 (1976)).   The district judge reviews legal conclusions *de novo*, even in the absence of an objection.  <u>See Cooper-Houston v. Southern Ry. Co.</u>, 37 F.3d 603, 604 (11th Cir. 1994).

**II[1].**

The Endangered Species Act of 1973 (ESA), 16 U.S.C. § 1531 *et seq.*, is intended to protect and conserve endangered and threatened species and their habitats.  The Fish and Wildlife Service (FWS or Service) administers the ESA with respect to species under the

---

[1]The Court fully adopts pages 1-12 of the Report and Recommendation.  (Doc. #85.)

jurisdiction of the Secretary of the Interior, including designating critical habitat.[2]  50 C.F.R. § 402.01(b).  The Court uses Service and Secretary interchangeably in its discussion below.

The Florida Panther (*Felis concolor coryi* or *puma concolor coryi*) has been listed as an endangered species since 1967, 32 Fed. Reg. 4001 (Mar. 11, 1967), and retained its status after the 1973 passage of the ESA.  The Florida Panther, a subspecies of the cougar, is "one of the rarest large mammals in the United States," 71 Fed. Reg. 30156-01 (May 25, 2006), and "one of the most endangered large mammals in the world."  Fund for Animals, Inc. v. Rice, 85 F.3d 535, 538 (11th Cir. 1996)(quoting a FWS Biological Opinion).  "Although the Florida Panther once ranged throughout the Southeastern United States, it has been reduced to a single population in south Florida."  Id.  Critical habitat, however, has never been designated for the Florida Panther.

In January 2009, the Conservancy of Southwest Florida (Conservancy) filed a petition with the Service under the ESA,

---

[2]"Critical habitat" is defined as:
(i) the specific areas within the geographical area occupied by the species . . . on which are found those physical and biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and

(ii) specific areas outside the geographical area occupied by the species . . . upon a determination of the Secretary that such areas are essential for the conservation of the species.
16 U.S.C. § 1532(5)(A).

Service regulations, and the Administrative Procedures Act (APA), asking the Service to establish critical habitat for the Florida Panther.   The Sierra Club and numerous other environmental organizations joined in that petition in July 2009.   On September 17, 2009, the Center for Biological Diversity and the Public Employees for Environmental Ethics and Counsel of Civil Associations petitioned the Service to designate critical habitat for the Florida Panther.   In November 2009, the Sierra Club filed a supplemental petition with the Service to establish critical habitat for the Florida Panther, specifically to account for habitat loss due to climate change.   Plaintiffs assert that these petitions were based on scientific reports submitted with their petitions which identified three priority zones for Panther habitat conservation.   Plaintiffs' petitions asked the Service to designate these zones as critical habitat because this would provide landscape-level protection of the entire area recognized by the best available science as essential to the survival and recovery of the species.

Because the Service had not granted or denied the petitions, on December 16, 2009, Conservancy and the Sierra Club gave a 60-day notice of intent to sue under the ESA's citizen-suit provision, 16 U.S.C. § 1540(g), and notified the Service by certified mail that they intended to file suit against it under the ESA and APA to compel responses to the petitions.   That letter also included a

notice of intent to sue for violations of ESA § 7.  Plaintiff Center for Biological Diversity served a citizen-suit notice on December 22, 2009.  Conservancy and the Sierra Club sent a supplemental notice letter on January 26, 2009.  In addition, plaintiffs sent another 60-day notice of intent to sue on March 1, 2010.  More than 60 days passed from the date of that letter to the filing of the Complaint.

On February 11, 2010, in three separate but virtually identical letters, the Service denied the Conservancy's January 2009 petition, the Center for Biological Diversity's September 2009 petition, and the Sierra Club's November 2009 petition, and refused to designate critical habitat for the Florida Panther.  In denying the petitions, the Service noted that it was in the process of working with several conservation organizations and private landowners in Collier County, Florida "to implement a landscape-scale Habitat Conservation Plan for which the landowners would seek a permit from the Service in accordance with Section 10 of the Act."  The Service noted that this process, referred to as the "Florida Panther Protection Program," may provide a framework for conservation and recovery efforts in other locations.

On June 25, 2010, plaintiffs filed a shotgun[3] four-count Amended Complaint (Doc. #42) alleging that the Service's denials of plaintiffs' several petitions to designate critical habitat for the Florida Panther violated the ESA and APA. (Doc. #85, p. 2.)  Count I alleges the denials were arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. §§ 706(2)(A), (D).  Count II alleges that the denials were in violation of the requirements of §§ 2, 3, and 7 of the ESA and §§ 706(2)(A), (D) of the APA.  Count III alleges that the denials were in violation of the ESA because they were not based on the best scientific data available, as required by § 1533(b)(2).  Count IV alleges that the denials were in violation of the ESA because the Service failed to comply with their non-discretionary duties for designation and revision of critical habitat.  Plaintiffs seek a declaratory judgment that the denials of the petition were in violation of the law for the reasons set forth in the Amended Complaint; an order vacating the denials of the petitions; an injunction remanding the matter to defendants and ordering defendants to make all necessary findings, initiate rulemaking to designate critical habitat, and set reasonable

---

[3]Plaintiffs have improperly incorporated all allegations of each count in every successive count. Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); Cramer v. State of Florida, 117 F.3d 1258, 1263 (11th Cir. 1997).

deadlines to complete the tasks; and an award of attorneys fees and costs.

### III.

The motions to dismiss collectively raise four arguments:  (1) the Court lacks subject-matter jurisdiction over the ESA claims because the decision whether to designate critical habitat for the Florida Panther is discretionary and therefore the Secretary is exempt from suit under the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g)(1)(C); (2) alternatively, the ESA counts fail to state a claim upon which relief may be granted; (3) plaintiffs lack standing because the Court cannot redress their claims; and (4) the APA counts fail to state a claim upon which relief may be granted because the decision to designate critical habitat for the Florida Panther is committed to the agency's discretion by law.  The first and third arguments implicate the jurisdiction of the Court to decide the case, and will therefore be discussed first.

### A.  Subject Matter Jurisdiction

Defendants raise a facial challenge to the subject matter jurisdiction of the court.  Subject matter jurisdiction relates to the court's power to adjudicate a case.  Morrison v. Nat'l Austl. Bank Ltd., 130 S. Ct. 2869, 2877 (2010); Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1243 (2010).  Plaintiffs assert federal jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201-02 (declaratory judgment and further relief), 16 U.S.C.

§ 1540(g)(ESA citizen suit), and 5 U.S.C. § 701-06 (APA). (Doc. #42, ¶6.)

Subject matter jurisdiction is clearly not created by 28 U.S.C. §§ 2201-02. The Declaratory Judgment Act is a procedural statute which grants no jurisdiction where jurisdiction does not otherwise exist. Vaden v. Discover Bank, 129 S. Ct. 1262, 1278 n.19 (2009); Christ v. Beneficial Corp., 547 F.3d 1292, 1299 (11th Cir. 2008); Household Bank , F.S.B. v. JFS Group, 320 F.3d 1249, 1253 (11th Cir. 2003)("The operation of the Declaratory Judgment Act is procedural only.").

The APA does not itself serve as an implied grant of federal subject matter jurisdiction. Califano v. Sanders, 430 U.S. 99, 105 (1977). Jurisdiction over APA challenges to federal agency action, however, is vested in federal district courts by virtue of 28 U.S.C. § 1331 unless another statute specifically bars judicial review in the district court. Alabama v. EPA, 871 F.2d 1548, 1559-60 (11th Cir. 1989); see also Chrysler Corp. v. Brown, 441 U.S. 281, 317 n.47 (1979)("Jurisdiction to review agency action under the APA is found in 28 U.S.C. § 1331."); 5 U.S.C. § 701(a)(1)(APA does not apply where "statutes preclude judicial review").

Title 28 U.S.C. § 1331 vests federal district courts with "original jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." Empire HealthChoice Assur., Inc. v. McVeigh, 547 U.S. 677, 689 (2006). "A

case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"   Id. at 690 (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983)).   At the very least, in this case plaintiffs' right to relief as to all four counts necessarily depends on resolution of a substantial question of federal law involving the ESA.   Therefore, subject matter jurisdiction exists as to all four counts unless the ESA specifically bars judicial review.

The parties' primary jurisdictional dispute is whether subject matter jurisdiction exists under the ESA citizen-suit provision. This provision grants federal district courts "jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation, or to order the Secretary to perform such act or duty, as the case may be."   16 U.S.C. § 1540(g)(1).   The "any such provision or regulation, or to order the Secretary to perform such act or duty" relates to three specific areas:

(1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf-

(A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any

provision of this chapter or regulation issued under the authority thereof; or

(B) to compel the Secretary to apply, pursuant to section 1535(g)(2)(B)(ii) of this title, the prohibitions set forth in or authorized pursuant to section 1533(d) or 1538(a)(1)(B) of this title with respect to the taking of any resident endangered species within any State; or

(C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary.

16 U.S.C. § 1540(g)(1)(A)-(C). The defendants argue that because the Secretary is not "in violation of any provision of this chapter or regulation issued under the authority thereof" and has not failed to perform any non-discretionary act or duty under § 1533, the Court has no subject matter jurisdiction under either § 1540(g)(1)(A) or (C).

The Supreme Court has cautioned about the imprecise use of the term "jurisdiction" in the case law. Reed Elsevier, Inc., 130 S. Ct. at 1243-44; Henderson v. Shinseki, 131 S. Ct. 1197, 1202-03 (2011). Defendants appear to mix subject matter jurisdiction with the merits of the underlying claims. Thus, defendants state: "Because the Service's decision regarding designation of critical habitat for the panther is committed to the agency's discretion, the ESA citizen-suit provision does not provide jurisdiction for review of Plaintiff's claims. Thus, even accepting as true all allegations in Plaintiffs' Amended Complaint, they are not entitled to any relief under the ESA." (Doc. #46, p. 8.)

Subject matter jurisdiction is "quite separate from the question whether the allegations the plaintiff makes entitle him to relief." <u>Morrison</u>, 130 S. Ct. at 2877. "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946).

> Rather, the District Court has jurisdiction if the right of petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, [ ] unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. [ ] Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.

<u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 89 (1998)(internal quotation marks and citations omitted). Here, plaintiffs win under one construction of the ESA and lose under another, and the claims are not implausible, frivolous or immaterial. The Court therefore concludes that the ESA does not preclude judicial review otherwise available under § 1331, and that it also has subject matter jurisdiction under the ESA citizen-suit provision.

Thus, the Court finds that it has subject matter jurisdiction over all claims in the Amended Complaint. The motions to dismiss will be denied to the extent they assert the contrary.

## B.  Constitutional Standing

The intervenor defendants argue that plaintiffs have no standing because the Court cannot fashion a meaningful remedy. They essentially assert that the decision to designate or not designate critical habitat will always be within the discretion of the Service, the Court cannot make or compel the decision, and therefore no constitutional standing exists.

The "'irreducible constitutional minimum' of standing requires: (1) that the plaintiff have suffered an 'injury in fact' – an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 167 (1997); see also Arizona Christian School Tuition Org. v. Winn, Nos. 09-987,09-991, 2011 WL 1225707 at *6 (U.S. Apr. 4, 2011)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  The only element in dispute is redressibility.

To determine if the redressability prong is satisfied, the Court examines the relief requested in the complaint to determine

whether it will compensate for or eliminate any effects of the alleged wrongdoing. <u>Steel Co.</u>, 523 U.S. at 105-09. Plaintiffs' relevant requested relief is for: a declaration that the denial of plaintiffs' petitions did not comply with the ESA, the Service's regulations and the APA; a declaration that the denial of plaintiffs' petitions was in violation of ESA §§ 2,3,and 7 and/or that the denials were arbitrary and capricious, an abuse of discretion and not in accordance with law; an order vacating the denial of the petitions; and an injunction remanding the matter to defendants, ordering defendants to make all necessary findings on the petitions, ordering defendants to initiate rulemaking to designate critical habitat and setting a reasonable deadline for these tasks to be completed. (Doc. #42, p. 35.)

Since the parties dispute whether the Service's denials constitute a violation of the ESA, a declaratory judgment is of value to plaintiffs, unlike the situation in <u>Steel Co.</u> <u>See</u> 523 U.S. at 106. Injunctive relief would also be of value to plaintiffs, since the Service's future conduct is otherwise likely to continue to inflict the alleged injury - failure to designate critical habitat. <u>Id.</u> at 109. The remedy need not obtain the ultimate goal - designation of critical habitat - so long as it relieves a discrete injury to plaintiff. <u>Massachusetts v. EPA</u>, 549 U.S. 497, 525-26 (2007). The remedies available to the Court are sufficient to satisfy the redressability requirement for

constitutional standing.   The motions to dismiss for lack of standing are denied.

## C.   Failure to State A Claim

Defendants argue in the alternative that the ESA counts fail to state a claim upon which relief may be granted.   Defendants also argue that the APA counts fail to state a claim upon which relief may be granted.

### (1)   The Endangered Species Act

Defendants argue that the counts under the ESA fail to state a claim upon which relief may be granted because (1) the denials of the requests to designate critical habitat were not done in violation of the ESA within the meaning of § 1540(g)(1)(A), and (2) the denials of the requests to designate critical habitat were discretionary actions and therefore outside the scope of § 1540(g)(1)(C), which applies only to acts or duties which are "not discretionary with the Secretary."   The Court agrees.

### (a) Count II:

Count II of the Complaint alleges that denying the petitions to declare critical habitat for the Florida Panther violated various provisions of ESA.   Specifically, plaintiffs assert that defendants violated: (1) the policy of Congress that "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this chapter" under 16 U.S.C.

-14-

§ 1531(c)(1); (2) the definition of "conserve" and its variants as used in the ESA, which means "to use and the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary," as set forth in 16 U.S.C. § 1532(3); and (3) the requirement that the Secretary "review other programs administered by him and utilize such programs in furtherance of the purposes of this chapter," and that "[a]ll other Federal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 1533 of this title," as provided in 16 U.S.C. § 1536(a)(1)(emphasis added).

No private cause of action is created for simply violating the policy provision in § 1531(c)(1) or the definition of "conserve" and its variations in § 1532(3). Neither provision creates any substantive duties, see Nat'l Wildlife Fed'n v. Marsh, 721 F.2d 767, 773 (11th Cir. 1983), and nothing in the statutory scheme suggests Congressional intent to create a private cause of action for such conduct. See Astra USA, Inc. v. Santa Clara County, Cal., No. 09-1273, 2011 WL 1119021 at *5 (U.S. Mar. 29, 2011)(recognition of any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private

remedy); <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>, 552 U.S. 148, 164 (2008)(implied cause of action exists only if Congress intended to create such a cause of action).   The § 1536(a)(1) requirement that the Secretary utilize programs he administers in furtherance of the purposes the ESA chapter creates no specific affirmative obligations on the Service.   In the context of the Amended Complaint, the allegation is essentially a challenge to the merits of the determination not to designate critical habitat.   In the circumstances alleged in this case, such a challenge is not subject to judicial review under the ESA. <u>Bennett</u>, 520 U.S. at 173-74.   The <u>Bennett</u> Court found that while § 1540(g)(1)(A) is a means to enforce substantive provisions of the ESA against regulated parties, it "is not an alternative avenue for judicial review of the Secretary's implementation of the statute." <u>Id.</u> at 173.   <u>Bennett</u> concluded that to allow suit pursuant to other sections of the ESA essentially challenging the Secretary's discretionary duties would make the existence of § 1540(g)(1)(C) "superfluous--and, worse still, its careful limitation to § 1533 would be nullified . . ."   <u>Id.</u>   Further, the second portion of § 1536(a)(1) refers to the obligations of <u>other</u> government agencies, not defendants.

The Court finds that Count II fails to state a claim for which relief may be granted under the ESA.   Count II will be dismissed to the extent it relies upon the ESA.

**(b) Count III:**

Count III alleges a claim that defendants failed to perform acts or duties under § 1533 which were not discretionary with the Secretary, in violation of § 1540(g)(1)(C).  More specifically, Count III alleges that the Secretary did not comply with 16 U.S.C. § 1533(b)(2), requiring him to designate and make revisions to critical habitat on the basis of the best scientific data available, and pertinent regulations thereunder.  Such a claim is subject to judicial review.  <u>Bennett</u>, 520 U.S. at 172.

The difficulty with Count III is that, as discussed below, the decision to designate critical habitat for a species declared endangered prior to the 1978 amendments to the ESA is not "not discretionary" within the meaning of § 1540(g)(1)(C).  Rather, the statute allows the Secretary to declare critical habitat for such endangered species, but does not require it.  Therefore, § 1533(b)(2) is inapplicable to the requests made by plaintiffs in this case.

In <u>Tennessee Valley Auth. v. Hill</u>, 437 U.S. 153 (1978) the Supreme Court traced the history of Congressional treatment of endangered species.  The Endangered Species Act of 1966, the first major congressional action concerning the preservation of endangered species, gave the Secretary power to identify the names of the species of native fish and wildlife found to be threatened with extinction; authorized the purchase of land for the

conservation, protection, restoration, and propagation of selected species of native fish and wildlife threatened with extinction; declared the preservation of endangered species a national policy; and directed all federal agencies both to protect these species and insofar as is practicable and consistent with their primary purposes, preserve the habitats of such threatened species on lands under their jurisdiction.  Id. at 174-75.

The Florida Panther (*Puma concolor coryi*) was listed as an endangered species in 1967 and has remained on the Endangered Species List.  See 32 Fed. Reg. 4,001 (Mar. 11, 1967).  In 1969, Congress enacted the Endangered Species Conservation Act, which broadened federal involvement in the preservation of endangered species.  Pub. L. No. 91-35, 83 Stat. 275 (1969).  The Endangered Species Act of 1973 "represented the most comprehensive legislation for the preservation of endangered species ever enacted by any nation."  Hill, 437 U.S. at 180.  The ESA required the Secretary to determine by regulation whether species were endangered or threatened based upon specific factors and the best scientific and commercial data available, Pub. L. No. 93-205, §§ 3(A), (B), and to publish a list of such species.  Id. at § 3(C)(1).  Species which had been listed under the Endangered Species Conservation Act of 1969 were deemed to be an endangered species under the ESA until republished to conform to the classifications under the ESA.  Id. at § 4(C)(3).  The original version of the ESA did not require the

Secretary to designate critical habitat for endangered or threatened species, but rather generically directed that the Secretary "shall issue such regulations as he deems necessary and advisable to provide for the conservation of such species." Id. at § 3(D).

Congress amended the ESA in 1978 in reaction to the Hill decision, which upheld the Secretary's decision to protect the critical habitat of snail darters by halting construction of a virtually completed $100 million dam. The Endangered Species Act Amendments of 1978, Pub. L. No. 95-632, 92 Stat. 3751 (1978), added a more restrictive statutory definition of "critical habitat," and amended § 1533(a)(1) to add the new sentence: "At the time any such [listing] regulation is proposed, the Secretary shall also by regulation, to the maximum extent prudent, specify any habitat of such species which is then considered to be critical habitat. The requirement of the preceding sentence shall not apply with respect to any species which was listed prior to enactment of the Endangered Species Act Amendments of 1978." Id. at § 11. The 1978 Amendments also provided that "critical habitat may be established for those species now listed as threatened or endangered species for which no critical habitat has heretofore been established as set forth in subparagraph (A) of this paragraph." Thus, after the 1978 amendments, the ESA required a designation of critical habitat at the time the Secretary proposed listing a new species as

endangered or threatened, but did not require designation of critical habitat for species previously listed.

Congress developed second thoughts about the 1978 amendments requiring critical habitat designation at the time of the proposed listing when it was determined that "only one new species proposed for listing successfully navigated both the listing and habitat designation processes" in three years.  Alabama-Tombigbee Rivers Coalition v. Kempthorne, 477 F.3d 1250, 1265 (11th Cir. 2007).  In the Endangered Species Act Amendments of 1982, Congress switched to a "concurrently" requirement which stated that the Secretary must designate critical habitat at the time the species is listed, not when such a listing is proposed.  Pub. L. No. 97-304, 96 Stat. 1411 (1982).  "After those amendments, . . . no part of the [ESA] required the Service to propose critical habitat at the time of the proposed listing of the species as endangered. [ ] The only requirement was that the Service designate critical habitat concurrently with its final listing decision, if doing so then would be prudent and if the habitat would be determinable at that time." Kempthorne, 477 F.3d at 1266 (internal citations omitted). "The use of the word 'concurrently' refers to the final decisions, not to the initial proposals."  Id. at 1268.  As before, nothing required a designation of critical habitat for species which had already been listed as endangered or threatened.

The current version of the ESA, in effect at the time of the petitions in this case, defines "critical habitat," § 1532(5)(A)[4], then provides:  "Critical habitat <u>may</u> be established for those species now listed as threatened or endangered species for which no critical habitat has heretofore been established as set forth in subparagraph (A) of this paragraph."   16 U.S.C. § 1532(5)(B) (emphasis added).   The ESA requires that the Secretary "shall" determine whether any species is an endangered or threatened species following five factors, "by regulation promulgated in accordance with subsection (b) of this section." 16 U.S.C. § 1533(a)(1).  Similarly, the Secretary "shall" designate critical habitat "concurrently with making a determination under paragraph (1) that a species is" endangered or threatened, "by regulation promulgated in accordance with subsection (b) of this section and to the maximum extent prudent and determinable," and "may" revise such designation from time-to-time thereafter as appropriate.  16 U.S.C. § 1533(3)(A).  Subsection (b) requires the Secretary to make the subsection (a)(1) determinations "solely on the basis of the best scientific and commercial data available" after conducting a review of the status of the species, 16 U.S.C. § 1533(b)(1)(A), and to designate and revise critical habitat "on the basis of the best scientific data available" after taking into consideration economic, national security and other relevant impacts.  16 U.S.C.

_____

[4]See footnote 2.

§ 1533(b)(2).  Once critical habitat is designated for a species, federal agencies are required to consult with the Service to ensure that their activities do not adversely modify the critical habitat to the point that it will no longer aid in a species' recovery.  16 U.S.C. § 1536(a).

On its face, the amended statute does not require the Secretary to designate critical habitat for species already listed as threatened or endangered prior to 1978, such as the Florida Panther.  The plain meaning of the "may" in the context of the ESA is that designation of critical habitat for prior listed species is discretionary with the Secretary.  This is confirmed by the legislative history of the amendments to the statute, summarized above.

Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992). Because the designation of critical habitat for species such as the Florida panther is discretionary, Count III fails to state a claim upon which relief may be granted.  The motions to dismiss are granted as to Count III.

### (c) Count IV:

Count IV also alleges that defendants did not comply with certain non-discretionary duties under the ESA.  Specifically, Count IV alleges that the Secretary failed to comply with 50 C.F.R. § 424.14(d), which in turn required compliance with 50 C.F.R. § 424.12(b); the procedures set forth in 16 U.S.C. §§ 1533(b)(3)(D)(i),(ii); and the procedures set forth in 50 C.F.R. §§ 424.10, 424.14(c)(1), (2), and (3).  Count IV alleges that at least some of these requirements apply to species listed before the 1982 amendments because Pub. L. No. 97-304 § 2(b)(2) states that proposals "to designate critical habitat . . . shall be subject to the [revision procedures]."  (Doc. #42, ¶87.)

The Court finds that Count IV fails to state a claim upon which relief may be granted, and it therefore will be dismissed. Section 2(b)(2) of the 1982 amendments does not state that plaintiffs' proposals or petitions to designate critical habitat are subject to the same procedures as if the Secretary had made the proposal for such designation.  Rather, it states that "[t]he Secretary shall designate critical habitat, or make revisions thereto, under subsection (a)(3) . . ."  Pub. L. 97-304 § 2(b)(2)(1982).  It is the Secretary's proposal to designate critical habitat that triggers the statutory and regulatory obligations, not plaintiffs' requests that the Secretary do so.

Title 50 C.F.R. § 424.14(b), which requires the Service to publish its finding as well as consider several factors regarding where the critical habitat is designated, is inapplicable in the instant case.  Plaintiffs' have merely _petitioned_ the Service to _designate_ critical habitat.   There is no petition to revise critical habitat, or to list, delist or reclassify species, and no proposed regulation by the Secretary.  Thus, only the regulations regarding _petitions_ are applicable.

The Court agrees that 50 C.F.R. § 424.14(d) is applicable to plaintiffs' petitions.  Section 424.14(d) states: "Petitions to _designate_ critical habitat or adopt special rules.  Upon receiving a petition to _designate_ critical habitat . . . the Secretary shall promptly conduct a review in accordance with the Administrative Procedure Act (5 U.S.C. 553) and applicable Departmental regulations, and take appropriate action."   50 C.F.R. § 424.14(d)(emphasis added).  43 C.F.R. § 14 "prescribes procedures for the filing and consideration of petitions for rulemaking."  43 C.F.R. § 14.1.  The only requirement is that "[t]he petition will be given prompt consideration and the petitioner will be notified promptly of action taken."  43 C.F.R. § 14.3.  The face of the Amended Complaint establishes that these procedures were followed.

**(2) The Administrative Procedures Act**

APA claims are set forth in Count I and a portion of Count II. In their motions to dismiss, defendants argue that the Service's

decision not to designate critical habitat for the Florida Panther
is committed to the agency's discretion, there are no applicable
statutory standards to apply, and therefore the decision is
unreviewable under the APA.  The Court agrees.

"As a general rule, actions taken by federal administrative
agencies are subject to judicial review." Nat'l Parks Conservation
Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003).  The APA
authorizes a court to "set aside agency actions, findings, and
conclusions found to be . . . arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law."  5 U.S.C.
§ 706(2). "The APA, by its terms, provides a right to judicial
review of all final agency action for which there is no other
adequate remedy in a court, [ ] and applies universally except to
the extent that - (1) statutes preclude judicial review; or (2)
agency action is committed to agency discretion by law § 701(a)."
Bennett, 520 U.S. at 175 (internal citations omitted); see also
Heckler v. Chaney, 470 U.S. 821, 828 (1985).  The exception for
action "committed to agency discretion" is a very narrow one.
Heckler, 470 U.S. at 830.  "The legislative history of the
Administrative Procedure Act indicates that it is applicable in
those rare instances where statutes are drawn in such broad terms
that in a given case there is no law to apply. . . ." Id. (quoting
Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410
(1971)(internal quotation omitted)).  "Provisions for agency review

do not restrict judicial review unless the statutory scheme displays a fairly discernible intent to limit jurisdiction, and the claims at issue are of the type Congress intended to be reviewed within the statutory structure. [ ] Generally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive." <u>Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.</u>, 130 S. Ct. 3138, 3150 (2010)(internal quotations and citations omitted).

As discussed above, the Secretary is not required to designate critical habitat for the Florida panther. The only action that is judicially reviewable is whether the petition was given prompt consideration and plaintiffs were promptly notified of the action taken. This is a severely limited review, but a review nonetheless. Therefore, the Court finds that plaintiffs can state a claim for relief under the APA.

However, just because plaintiffs' can state a claim for relief under the APA regarding their petition does not mean that they did state a claim in the instant case. In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Christopher v. Harbury</u>, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly

suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1274 (11th Cir. 2008)(citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007)); <u>see also Edwards v. Prime Inc.</u>, 602 F.3d 1276, 1291 (11th Cir. 2010).

As stated above, the only claim plaintiffs could have against the Service is a claim that the Service did not give prompt consideration to their petition and notify them promptly of the action taken in violation of 43 C.F.R. § 14.3. According to the allegations in the Complaint, plaintiffs filed their petitions in January, July and September of 2009, with a supplemental petition filed in November 2009. (Doc. #42, ¶¶ 55-57.) Then, on February 11, 2010, the Service denied the petitions in letters stating the reasons for the denial. (<u>Id.</u> at ¶59.) The Court finds that the Service substantially complied with 43 C.F.R. § 14.3 and gave prompt consideration to their petition and promptly notified them of its action. Thus, plaintiffs have failed to state a claim for relief pursuant to the APA.

Accordingly, it is now

**ORDERED**:

1. The Report and Recommendation (Doc. #85) is hereby is **ADOPTED IN PART AND REJECTED IN PART** as set forth above.

2. Eastern Collier Property Owners' Motion to Dismiss (Doc. #45) is **GRANTED**.

3. Federal Defendants' Motion to Dismiss (Doc. #46) is **GRANTED**.

4. Intervenor Seminole Tribe of Florida's Motion to Dismiss Amended Complaint (Doc. #59) is **GRANTED**.

5. The Amended Complaint is dismissed without prejudice for failing to state claims upon which relief may be granted. The Clerk shall enter judgment accordingly, terminate all deadlines, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of April, 2011.

JOHN E. STEELE
United States District Judge

Copies:
Hon. Sheri Polster Chappell
United States Magistrate Judge

Counsel of Record

-28-